An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-261

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

MELISSA B. BASS,
     Employee, Plaintiff,

v.

HARNETT COUNTY,
     Employer, SELF-INSURED
     (Key     Risk     Management
     Services, Servicing Agent),
     Defendant.

From North Carolina Industrial Commission
I.C. No. X65648

Appeal by Plaintiff from opinion and award entered 20 November 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 August 2014.

*Lucas, Denning, & Ellerbe, P.A., by Sarah E. Ellerbe and Martha S. Bradley, and David F. Mills, P.A., by David F. Mills, for Plaintiff.*

*Prather Law Firm, P.C., by J.D. Prather, for Defendant.*

STEPHENS, Judge.

*Factual and Procedural Background*

This appeal arises from Plaintiff Employee Melissa B. Bass's claim for workers' compensation benefits against her

employer, Defendant Harnett County ("the County"). Based on the evidence presented, the North Carolina Industrial Commission ("the Full Commission") made the following pertinent findings of fact:

1. At the time of the hearing before the Full Commission, Plaintiff was 45 years old and married. She had worked with Defendant-Employer, Harnett County, for approximately 10 years in various capacities, and at the time of the alleged injury she was working as a paramedic. Plaintiff's job duties included responding to calls, treatment of emergency patients, and transporting the patients to the hospital, if necessary. She also previously worked for Harnett County as a secretary (Secretary IV) and as a 911 dispatcher in the sheriff's office.

2. Before the alleged injury Plaintiff had been diagnosed with and treated for rheumatoid arthritis with symptoms beginning prior to 2004. Dr. Kinga M. Vereczkey-Porter of Sanford Specialty Clinics began treating Plaintiff for this condition in August 2004 and has continued to treat Plaintiff since that time.

3. In November 2010, Dr. Porter referred Plaintiff to a neurosurgeon, Dr. Michael Haglund at Duke to assess MRI findings and clinical symptoms consistent with degenerative arthritis. Plaintiff underwent a three-level cervical fusion from C4-C7 with Dr. Haglund on 17 November 2010.

4. After the November 2010 cervical fusion, Plaintiff continued treating with Dr. [Vereczkey-]Porter for her rheumatoid arthritis. Dr. [Vereczkey-]Porter saw Plaintiff on 12 January 2011, and she

complained of neck and upper back pain. At the 9 March 2011 visit, Plaintiff complained of hand and hip pain, joint swelling, and stiffness.

5. Plaintiff was released by Dr. Haglund to work full-duty as a paramedic in April 2011 without any work restrictions.

6. At a 21 June 2011 visit with Dr. [Vereczkey-]Porter, Plaintiff complained of hip pain, left ear discomfort, coughing and headaches.

7. On 6 July 2011 , Plaintiff was performing her regular duties working as a paramedic. On that day, she was working with a partner, Eddie Woodall of Benhaven Emergency Services, when they received a call to go to a personal residence. When they arrived, the patient was unresponsive. Plaintiff testified that while she was assessing the patient, she reached across her body with her right arm to pick up a cardiac monitor. Plaintiff slated at that time she felt a burning sensation in her neck as she lifted the monitor. Plaintiff continued assessing the patient, and it was determined that the patient needed emergency care. Plaintiff and Woodall transported the patient to Central Carolina Hospital in Sanford.

8. Woodall testified:

> We had went to a call, and I believe it was a chest pain call. Went in the house, we didn't have to carry any equipment then, because we kept all of our equipment on the stretcher. So when we rolled the stretcher, we rolled it up to the front door. I actually carried the bag and the

monitor going in, I think. I'm not for sure. She did her assessment in the house, decided we were going to go to the hospital. I grabbed the bag to move out to the truck, and she basically picked the monitor up. And then when we got to the truck, after she sat the monitor down beside the truck so we can — after we got the patient loaded and ready to — she said she couldn't lift the stretcher. I said, "okay, I got it." I picked the stretcher up. We got the guy in the truck. And that is when she told me that she was in a lot of pain.

The Full Commission finds that Woodall's testimony does not describe an injury by accident or a specific traumatic incident [of] the work assigned.

9. At the hospital. Plaintiff advised Woodall that she was experiencing pain in her neck and arm, therefore, outside assistance was sought to help transport the patient into the hospital. Plaintiff and Woodall then returned to the station in Harnett County at which time Plaintiff ended her shift early due to the pain she was experiencing.

10. On the return trip to Harnett County, or possibly after she arrived, Plaintiff contacted her supervisor, West[1] Barefoot ("Barefoot"), by cell phone advising that she would need to go home because she was having pain. Barefoot testified that

---

[1] Barefoot is referred to as "Wes" Barefoot in some parts of the record on appeal.

Plaintiff called him at approximately 4:38 p.m., and stated that she attributed her pain to her lupus and "overdoing it" the past few days. Barefoot testified that Plaintiff did not mention anything about injuring her neck or right arm in any work-related activity.

11. Plaintiff also sent an email to Barefoot later that evening, stating that she "had been hurting since Monday but today it has gotten so bad that [she could not] take the pain without some relief."

12. Plaintiff did not seek medical treatment for her injury at Central Carolina Hospital immediately after the alleged injury. She continued treating with the physician treating her for rheumatoid arthritis, Dr. [Vereczkey - ]Porter. Plaintiff only missed part of one shift and then continued working full-duty as a paramedic after the alleged injury. As time went on, the neck pain continued, and Plaintiff complained that she was losing the use of the muscles in her arms as the weakness increased.

13. Plaintiff continued to work fulltime from 11 July 2011 until 20 September 2011.

14. Following the alleged work-related injury, Plaintiff continued treating with Dr. [Vereczkey-]Porter for rheumatoid arthritis, and saw h[er] on 27 July 2011. Plaintiff complained of neck stiffness, tightness, and pain. Dr. [Vereczkey-]Porter testified that Plaintiff had more muscle spasms in the upper thoracic spine as well, but h[er] diagnosis concerning Plaintiff's cervical spine did not change from the diagnosis recorded before the alleged 6 July 2011 injury by accident.

At a 20 September 2011 appointment with Dr. Vereczkey-Porter, Plaintiff complained of neck stiffness, tightness, and pain. Dr. Vereczkey-Porter referred Plaintiff for X rays and took her out of work. However, Plaintiff did not relate her symptoms to the alleged incident involving the cardiac monitor.

On 28 September 2011, Plaintiff verbally reported the alleged incident to the County by contacting Risk Manager Melinda Bethune. On 30 September 2011, she reported the alleged work injury to her supervisor, Barefoot. Following her report, Plaintiff continued to work for the County in a light-duty position. Regarding Plaintiff's failure to timely report her alleged injury, the Full Commission made the following finding of fact:

> 18. Plaintiff testified that she did not tell her supervisor about the cardiac monitor incident because she did not appreciate the seriousness of the situation and she hoped she would feel better after some rest. She offered additional testimony that she had just come back to work from her previous surgery, and she did not want to admit to herself or anyone else that she had suffered another injury. Given that Plaintiff was willing to tell her employer that she was unable to work due to pain, the Full Commission finds Plaintiff's testimony that she did not want to admit an injury lacking any credibility. Accordingly, the Full Commission assigns little or no weight to Plaintiff's testimony. The Full Commission assigns greater weight to the

testimony of Barefoot than to Plaintiff or Woodall because Barefoot's testimony is supported by the email from Plaintiff to Barefoot and the medical records.

Plaintiff saw Dr. Vereczkey-Porter again on 19 October 2011, reporting increased pain, numbness, and weakness, along with headaches, difficulty sleeping, and other symptoms. Dr. Vereczkey-Porter referred Plaintiff to her neurosurgeon, Dr. Michael Haglund. Dr. Haglund had previously treated Plaintiff for degenerative arthritis and performed a three-level cervical fusion on 17 November 2010. Following that surgery, Plaintiff had been released to work without restrictions in April 2011.

Following visits in October and November 2011, Dr. Haglund diagnosed a herniated disk and degenerative changes to Plaintiff's spine. On 29 December 2011, Dr. Haglund performed a second cervical fusion on Plaintiff. On 17 May 2012, Dr. Haglund set out permanent work restrictions for Plaintiff, limiting her to lifting no more than 30-50 pounds. Dr. Haglund believed Plaintiff would reach maximum medical improvement by 29 June 2012 and assigned a 20% permanent partial impairment rating to Plaintiff's back with 13% attributable to the November 2010 surgery and 7% to the December 2011 surgery.

Plaintiff returned to light duty work with the County until 31 May 2012 when she was terminated from her job as a paramedic

because her work restrictions could not be accommodated in that job. On 1 July 2012, Plaintiff began a clerical job at West Harnett High School, but quit on 2 August 2012 due to pain. At the time of the hearing before the Commission, Plaintiff had not sought further employment.

In its opinion and award filed 20 November 2013, the Full Commission found as fact that Plaintiff did not suffer an injury by accident or a specific traumatic incident on 6 July 2011, and that, even had Plaintiff suffered an injury by accident or a specific traumatic incident on that date, the County was prejudiced by her failure to provide timely notice of the alleged incident without justification. Accordingly, the Full Commission denied Plaintiff's claims. From the opinion and award, Plaintiff appeals.

*Discussion*

On appeal, Plaintiff argues that the Full Commission erred in making findings of fact that are not supported by competent evidence and conclusions of law that are not supported by its findings of fact. We disagree.

*I. Standard of review*

> Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence,

and (2) whether the conclusions of law are justified by the findings of fact. Where there is competent evidence to support the Commission's findings, they are binding on appeal even in light of evidence to support contrary findings. The Commission's conclusions of law are reviewed *de novo*.

It is the duty of the Commission to decide the matters in controversy and not the role of this Court to re-weigh the evidence.

*Starr v. Gaston Cty. Bd. Of Educ.*, 191 N.C. App. 301, 304-05, 663 S.E.2d 322, 325 (2008) (citations and internal quotation marks omitted). "The Full Commission is the sole judge of the weight and credibility of the evidence." *Trivette v. Mid-South Mgmt., Inc.*, 154 N.C. App. 140, 144, 571 S.E.2d 692, 695 (2002) (citation and internal quotation marks omitted). This Court's role in reviewing an appeal of a Full Commission decision is settled beyond any question.

*II. Findings of fact*

Plaintiff first argues that portions of findings of fact 8 and 14 are unsupported by competent evidence. We disagree.

As noted *supra*, in finding of fact 8, the Full Commission quoted a portion of Woodall's testimony and then stated, "Woodall's testimony d[id] not describe an injury by accident or a specific traumatic incident [of] the work assigned" occurring on 6 July 2011. Plaintiff contends that, while the quoted

testimony from Woodall does not describe a specific traumatic incident, other testimony from Woodall *did* describe a specific traumatic incident. Plaintiff misperceives this Court's task on appeal. We do not reweigh the evidence nor may we sift through the evidence before the Full Commission in search of evidence which would contradict the Full Commission's findings of fact. We do not second-guess the Full Commission's credibility determinations. Here, the Full Commission appears to have found the quoted portion of Woodall's testimony the most relevant and/or credible in undertaking its duty to find the necessary facts to resolve Plaintiff's claim. Finding of fact 8 is supported by competent evidence, and Bass's argument accordingly must be overruled.

Plaintiff also contends that no competent evidence supports the portion of finding of fact 14 which stated that Dr. Vereczkey-Porter's "diagnosis concerning Plaintiff's cervical spine did not change from the diagnosis recorded before the alleged 6 July 2011 injury by accident." However, Plaintiff then acknowledges that "[t]his finding [of fact] is perhaps literally true[.]" We agree. Dr. Vereczkey-Porter testified that there was no change in Plaintiff's diagnosis concerning her cervical spine. Because this finding of fact is supported by

competent evidence, it is binding on appeal. *Starr*, 191 N.C. App. at 304-05, 663 S.E.2d at 325. We reject Plaintiff's invitation to reweigh the evidence on this point.

Plaintiff further contends that the Full Commission's finding of fact that Dr. Vereczkey-Porter's testimony indicated there was no change in Plaintiff's diagnosis did not *a fortiori* compel its ultimate finding that Bass suffered no specific traumatic injury on 6 July 2011. This argument is inapposite. On appeal, this Court considers only whether the Full Commission's determination that Plaintiff did not suffer a specific traumatic injury on 6 July 2011 is supported by the other findings of fact. We are *not* concerned with whether the evidence and findings of fact *might* support some other ultimate finding. Accordingly, Plaintiff's argument on this issue is overruled.

Plaintiff next argues that, in finding of fact 18, the Full Commission did "not provide a basis for the limited credibility attributed to Plaintiff's testimony." This is patently incorrect. In the challenged finding, the Full Commission was quite specific about the reasons behind its credibility determinations:

> Given that Plaintiff was willing to tell her
> employer that she was unable to work due to

> pain, the Full Commission finds Plaintiff's testimony that she did not want to admit an injury lacking any credibility. Accordingly, the Full Commission assigns little or no weight to Plaintiff's testimony. The Full Commission assigns greater weight to the testimony of Barefoot than to Plaintiff or Woodall because Barefoot's testimony is supported by the email from Plaintiff to Barefoot and the medical records.

Such credibility determinations are the sole province of the Full Commission. *See Trivette*, 154 N.C. App. at 144, 571 S.E.2d at 695. This argument is overruled.

Plaintiff also argues that no competent evidence supported the finding of fact that, even if she had suffered a specific traumatic incident, she did not have a reasonable excuse for failing to give her employer timely notice. Because we affirm the Full Commission's determination that Plaintiff did not, in fact, suffer a specific traumatic injury on 6 July 2011, any findings about reasonable excuse in the delay of reporting the alleged incident are unnecessary, and we need not address this argument. We likewise need not address Plaintiff's argument on the propriety of the conclusions of law on the notice issue.

*III. Conclusions of law*

Plaintiff's argument that the Full Commission erred in concluding as a matter of law that she failed to prove a

specific traumatic incident and is thus not entitled to benefits is based upon her allegations of error in the findings of fact as discussed *supra*. Having concluded that the Full Commission's findings of fact are supported by competent evidence, we again reject Plaintiff's contention that, had the Full Commission made different determinations regarding the weight of the evidence and the credibility of the witnesses, it would have made different findings which in turn would have resulted in different determinations. The opinion and award of the Full Commission is

AFFIRMED.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).